FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 19, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JANE DOE,<br><br>          Plaintiff,<br><br>          v.<br><br>T-MOBILE USA, INC. and WIRELESS VISION, LLC,<br><br>          Defendants. | No. 4:23-CV-05166-SAB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, IN PART** |

      Before the Court is Defendants' Joint Motion to Dismiss the First Amended Complaint for Failure to State a Claim, ECF No. 34. The motion was heard without oral argument. Defendant T-Mobile USA, Inc. is represented by Caroline Morgan and Sean Russel. Defendant Wireless Vision LLC is represented by Kristin Nealey Meier, Perie Reiko Koyama and Sean Russel. Plaintiff is represented by Carrie Goldberg, Emma Aubrey, and Laura Hecht-Felella.

      Plaintiff originally filed this action in Benton County Superior Court. Defendants removed the action to the Eastern District of Washington and now move to dismiss the action, asserting Plaintiff has failed to state a claim upon which relief may be granted.

### Motion Standard

      To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 1

*v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Ninth Circuit explained:

> To be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. The factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When evaluating a Rule 12(b)(6) motion, the court must draw all reasonable inferences in favor of the non-moving party. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). However, the court is not required to accept conclusory allegations as true or to accept any unreasonable inferences in a complaint. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1054 (9th Cir. 2008).

### Plaintiff's Complaint

Plaintiff alleges the following facts in her Amended Complaint[1]:

On October 22, 2022, Plaintiff went to the T-Mobile store at the Columbia Center Mall in Kennewick, Washington to upgrade her iPhone. T-Mobile was offering an incentive to customers to trade in their devices. If customers upgraded their phone to a newer model, they could get a credit on the price of the new model if they relinquished their old one at the store. The Columbia Center Mall T-Mobile store offered customers in-store, turn-key service to migrate their data, including

---

[1] In response to Defendant's Motion to Dismiss, the Court granted Plaintiff leave to to file an Amended Complaint. ECF No. 25. Plaintiff did so on February 5, 2024, ECF No. 28.

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 2

pictures, apps, contacts, etc. from their old iPhone to their new iPhone. This migration process required customers to provide instructions to the T-Mobile employee to unlock their phone so the data to be migrated was accessible to them.

T-Mobile Store De'aundre Gomez, Sales Representative #791, assisted Plaintiff is transferring her data from her old iPhone to the new iPhone 14 Pro Max. He required Plaintiff to enter her password several times. When the data transfer was complete, Gomez affixed a sticker to Plaintiff's old iPhone, placed the phone in a bubble wrap envelope and placed the envelope under the store counter.[2] Plaintiff believed, based on Defendants' representations, that her old iPhone would be wiped of all data and returned to factory settings.

Plaintiff left the T-Mobile store with her new iPhone 14 Pro Max, leaving her old iPhone at the store as a trade-in for an applied credit towards her purchase. It was not until later, around 6:30 p.m., that Plaintiff checked her social media accounts on her new iPhone 14 Pro Max. To her shock, she discovered that an unauthorized person had accessed her Snapchat account and disseminated explicit photos of her in lingerie, nude photos of her, and a video of her and her partner having sexual intercourse. This media had originally been stored on the camera roll of the old iPhone that Plaintiff traded in early that day at T-Mobile. The old iPhone also had information regarding Plaintiff's banking information, a copy of her social security card on a tax application used by a former employer, and credit card information.

Plaintiff quickly returned to the T-Mobile store with her mother to speak to the store manager. Defendants' employees would not allow Plaintiff to speak to a store manager. Plaintiff contacted the Kennewick Police Department and mall

---

[2] The purpose of affixing the sticker to the iPhone's screen was to provide assurance that the device would not be tampered with before it was reconditioned by Defendant T-Mobile.

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 3

security, who went to the store. The store manager eventually went to the back room, along with the police and mall security, and asked Gomez the whereabouts of Plaintiff's old iPhone. He said the phone was in the front of the store, and another employee said there had been no trade-ins that day.

Eventually, the store manager went to the store's storage room and found Plaintiff's old iPhone. The sticker had been removed. Although the iPhone was returned to Plaintiff, the store manager reversed the trade-in credit, requiring Plaintiff's mother to pay for Plaintiff's new iPhone 14 Pro Max.

Plaintiff came to learn that the cameras in the back room did not work and the police officers responding to the incident noted that the next day, the manager's office smelled strongly of cannabis.

Plaintiff alleges that T-Mobile has long known and turned a blind eye to its retail store employees routinely abusing their authority to illicitly obtain sensitive customer data under the guise of assisting customers with repairs and data transfers. For almost a decade, T-Mobile customers across the United States have regularly reported, as evidenced by news stories and lawsuits, instances of retail store employees stealing their intimate videos, explicit photos, and bank accounts. Nevertheless, T-Mobile has failed to implement any common-sense security hardware or software to protect consumers from their data and privacy being exploited during ordinary transactions at the T-Mobile store.

Plaintiff alleges she has experienced extreme emotional distress, including mental anguish, embarrassment, and humiliation as a result of Defendants' conduct. This has manifested in diverse ways, impacting her quality of life. For example, Plaintiff lives in constant fear that her intimate photos and videos have been or will be distributed to others. She is terrified about coworkers, family members and peers, even the grocery store clerk, seeing the sensitive media Defendants' stole from her phone. Defendants' actions exacerbated Plaintiff's existing mental health conditions, causing her to experience physical

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 4

manifestations of stress and anxiety and to be diagnosed with Post Traumatic Stress Disorder.

She asserts her damages are not limited to pain and suffering, but also include recovery for injury to business and property. She asserts a property injury transpired in this case because the contents of her phone, her data, and the intellectual property of her images were stolen from her and disseminated.

Plaintiff is asserting twelve causes of action: two federal causes of action: (1) a claim under 15 U.S.C. § 6851 - the 2022 Reauthorization of Violence Against Women Act ("VAWA"); and (2) a claim under 18 U.S.C. § 1030 – the Computer Fraud & Abuse Act; and ten state causes of action: (1) Negligence; (2) Intrusion Upon Solitude or Seclusion; (3) Outrage; (4) Negligent Misrepresentation; (5) Negligent Hiring and Retention; (6) Unauthorized Disclosure of Intimate Images Act; (7) Sexual Harassment under the Washington Law Against Discrimination, (8) violation of the Consumer Protection Act; (9) Trespass to Chattels; and (10) Conversion.

## Analysis

Defendants are asking the Court to dismiss all of Plaintiff's claims.

**A. Federal Causes of Action**

    **(1) 15 U.S.C. § 6851**

Plaintiff is bringing a claim under the 2022 Reauthorization of Violence Against Women Act ("VAWA"), 15 U.S.C. § 6851. This statute took effect on October 1, 2022.

> 15 U.S.C. § 6851(b) provides:
>    (b) Civil action
>       (1) Right of action
>          (A) In general
> Except as provided in paragraph (4), an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a

**ORDER GRANTING MOTION TO DISMISS, IN PART ~ 5**

person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief as set forth in paragraph (3).

(3) Relief
(A) In general
In a civil action filed under this section—
(i) an individual may recover the actual damages sustained by the individual or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred; and
(ii) the court may, in addition to any other relief available at law, order equitable relief, including a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction.

Defendants argue that Plaintiff's claim under the 2022 Reauthorization of Violence Against Women Act ("VAWA") should be dismissed as a matter of law because it cannot be premised on vicarious liability. The Court disagrees.

The general rule in the Ninth Circuit is that where the statute itself is silent as to vicarious liability, courts should conclude that Congress intended to incorporate "ordinary tort-related vicarious liability rules." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014). In *Gomez*, the Ninth Circuit held that a defendant could be held vicariously liable for Telephone Consumer Act (TCPA) violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller. *Id.* at 879. Similarly, in *Columbia Pictures Indust., Inc. v. Fung*, the Ninth Circuit applied agency law to determine whether a service provider was responsible under the Digital Millennium Copy Right Act for copyright infringement by its employees. 710 F.3d 1020, 1038 (9th Cir. 2013).

Here, the statute is silent as to vicarious liability and as such, under Ninth

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 6

Circuit precedent, the Court concludes that Congress intended that a defendant can be held vicariously liable for a violation of § 6851, using common law vicarious liability principles. As such, the Court declines to dismiss Plaintiff's § 6851 claim as a matter of law.

### (2) Computer Fraud & Abuse Act (CFAA)

Plaintiff is bringing a claim under the Computer Fraud & Abuse Act (CFAA). 18 U.S.C. § 1030. It provides for criminal liability for unauthorized access to a computer. *Id.* In addition, the CFAA imposes civil liability on whoever:

> intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information from any protected computer.

§ 1030(a)(2)(C).

> A protected computer means a computer-
>
> (B) which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States.

§ 1030(e)(2)(B).

> To "exceed authorize access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter.

§ 1030(e)(6).

> The term "damage" means any impairment to the integrity or available of data, a program a system, or information.

§ 1030(e)(8).

> The term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

§ 1030(e)(11).

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 7

Case law has interpreted the plain language of this definition to mean: (1) reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation; and (2) any revenue lost, cost incurred, or other consequential damages because of interruption of service. *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167 (11th Cir. 2017).

Section (g) provides for civil damages:

> (g) Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclause (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

§ 1030(g).

The subclauses in Subsection (c)(4)(A)(i) are as follows:

> (I) loss to 1 or more persons during any 1-year … aggregating at least $5,000 in value;
> (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (III) physical injury to any person;
> (IV) a threat to public health or safety;
> (V)  damage affecting a computer used by or for, an entity of the United State Government in furtherance of the administration of justice, national defense, or national security;

Defendants argue Plaintiff fails to plead the requisite damage or loss under the CFAA. The Court agrees. *See* §§ 1030(e)(8), (11). Regardless of whether

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 8

vicarious liability is available under the CFAA[3], Plaintiff has not alleged sufficient facts to assert she experienced damage or loss as defined by the statute because of Gomez' conduct. Additionally, Plaintiff has not alleged disruption of any service as required by the statute for consequential damages. As such, Plaintiff's CFAA claim is dismissed.

### B. State Causes of Action

Many of Plaintiff's state law claims are based on vicarious liability. Defendants argue Plaintiff cannot show that their employee, Gomez, was acting within the scope of his employment and thus those claims based on vicarious liability should be dismissed. In addition, Defendants argue that many of Plaintiff's claims are duplicative, and they should be dismissed on that ground at well.

#### (1) Vicarious Liability

Defendants argue that Gomez was not acting within the scope of employment when he accessed Plaintiff's cell phone data.

Under the rule of *respondeat superior*, an employer is vicariously liable to third parties for its employee's torts committed within the scope of employment.

---

[3]In the Ninth Circuit, district courts have held that an employer can be vicariously liable for an employee's violations of the CFAA if those transgressions occur in the scope of employment or the employer directs the employee's conduct. *See NetApp, Inc. v. Nimble Storage, Inc.*, 41 F.Supp.3d 816, 835 (N.D. Calif. 2014), *citing to SBM Site Servs., LLC v. Garrett,* No. 10–cv–00385, 2012 WL 628619, at *6, (D. Colo. Feb. 27, 2012) ("It is reasonable to infer that Garrett accessed SBM's laptop during the time that he was employed with Able and in the scope of such employment."); *Charles Schwab & Co. v. Carter*, No. 04 C 7071, 2005 WL 2369815, at *6, 2005 U.S. Dist. LEXIS 21348, at *20 (N.D.Ill. 2005) ("the Court assumes that Congress drafted the CFAA with an intent to permit vicarious liability").

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 9

*Robel v. Roundup Corp.*, 148 Wash.2d 35, 53 (2002). An employee is within the scope of employment if they are (1) engaged in the performance of duties required by their employment contract or specifically directed by the employer—i.e., fulfilling their job functions, or (2) engaged in the furtherance of the employer's interests. *Id*. In applying this test, courts focus on the benefit to the employer of the employee's liability-causing conduct. *Dickinson v. Edwards*, 105 Wash.2d 457, 467 (1986).

On the other hand, conduct not performed in furtherance of the employer's business is outside the scope of employment. *Evans v. Tacoma Sch. Dist.*, 195 Wash.App. 26, 37 (2016). This includes conduct involving the employee's "wholly personal motive" and "solely personal objectives or desires." *Id*. "Where the employee steps aside from the employer's purposes in order to pursue a personal objective of the employee, the employer is not vicariously liable." *Niece v. Elmview Grp. Home*, 131 Wash.2d 39, 48 (1997).

Whether an employee's conduct is within the scope of employment generally is a factual question. *Michael v. Laponsey*, 123 Wash.App. 873, 876 (2004). However, "certain fact patterns may, as a matter of law, relieve the employer of liability." *Thompson v. Everett Clinic, et al.*, 71 Wash.App. 548, 552 (1993).

Here, Plaintiff has alleged sufficient facts that Gomez was acting within the scope of his employment to survive a motion to dismiss.

### (2) Duplicative Claims

Defendants argue that certain claims are duplicative of each other and ask the Court to dismiss those claims for this reason. The Court declines to do so. It is not the Court's practice to dismiss duplicative claim near the onset of litigation. Generally, the concern with duplicative claims is the possibility of duplicative damages. Should any of the alleged duplicative claims proceed to trial or otherwise to judgment, the Court can ensure through proper jury instructions or other means

**ORDER GRANTING MOTION TO DISMISS, IN PART ~ 10**

that Plaintiff does not recover duplicative damages. Defendants have not argued that the alleged duplicative claims have expanded the scope of discovery or otherwise place additional burdens on them. As such, the Court declines to dismiss any alleged duplicative claims.

### (3) Negligence

Defendants ask the Court to find as a matter of law that they do not have a duty of care to Plaintiff. The Court declines to do so.

To state a claim for negligence, a plaintiff must allege facts showing that (1) Defendants owed a duty of care to Plaintiff; (2) Defendants breached that duty; and (3) that breach was the proximate cause of Plaintiff's injuries. *Nivens v. 7-11 Hoagy's Corner*, 133 Wash.2d 192, 202 (1997). Washington law recognizes that a special relationship between a business and an invitee because the invitee enters the business premises for the economic benefit of the business. *Id.* In such a case, the invitee entrusts themselves to the control of the business owner over the premises and to the conduct of others on the premises. *Id.*

Plaintiff alleges that Defendants have a duty to protect her from imminent criminal harm and reasonably foreseeable criminal conduct and that Defendants breached this duty by facilitating the unlawful accessing and dissemination of her personal data and private images, which resulted in foreseeable injury and damage to her, consisting of financial loss, damage to property, physical damages and a threat to her public safety.

Plaintiff's allegations are sufficient to survive a motion to dismiss.

### (4) Negligent Misrepresentation Claim

Defendants argue Plaintiff failed to plead her negligent misrepresentation with particularity claim and failed to adequately plead reliance and cognizable damages.

Under Washington law, in order to adequately plead a negligent misrepresentation claim, Plaintiff must plead that (1) Defendants supplied

**ORDER GRANTING MOTION TO DISMISS, IN PART ~ 11**

information for the guidance of another in their business transactions, (2) the information was false, (3) Defendants knew or should have known that the information was supplied to guide Plaintiff in her business transactions, (4) Defendants were negligent in obtaining or communicating the false information, (5) Plaintiff relied on the false information, (6) Plaintiff's reliance was reasonable, and (7) the false information proximately caused Plaintiff's damages.

Plaintiff asserts Defendants represented to their customers they would safeguard the privacy of customers' personal data, safeguard customer devices when they are in the possession of Defendants and protect customers lawfully on Defendants' store premises from the propensity of its employees to steal sensitive data and that this representation was false. She asserts Defendants knew or should have know the information was supplied to guide her in her business transaction. She alleges she relied on this information when she traded in his old iPhone for credit toward the new iPhone. Finally, she alleges she would never have upgraded her phone if she knew it would involve her data and personal information being accessed and exploited by Defendants and their employees. Plaintiff asserts she experienced privacy violations and serious emotional and psychological injuries.

These allegations are sufficient to adequately plead a cause of action of negligent misrepresentation.

     **(5) Negligent Hiring and Retention Claim**

Defendants argue Plaintiff's negligent hiring and retention claim must be dismissed because Plaintiff fails to allege any facts that Defendants knew or should have known of Gomez's unfitness.

Under Washington law, an employer has a limited duty "to foreseeable victims to prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others," even when an employee is acting outside the scope of employment at the time. *Niece,* 131 Wash.2d at 48. Negligent hiring and retention claims are based on the theory that it was the employer who wronged the

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 12

injured party, and these claims are entirely independent of the liability an employer might have under the doctrine of respondeat superior. *Id*.

To adequately plead a negligent hiring claim, Plaintiff must plead that (1) Defendants knew or, in the exercise of ordinary care, should have known of its employee's unfitness at the time of hiring; and (2) the negligently hired employee proximately caused Plaintiff's injury." *Rucshner v. ADT, Sec. Sys., Inc.*, 149 Wash. App. 665, 680 (2009).

For negligent retention, Plaintiff must plead that (1) Defendants knew, or in the exercise of ordinary care, should have known of its employee's unfitness before the occurrence; and (2) retaining the employee was a proximate cause of Plaintiff's injuries." *Betty Y. v. Al-Hellou*, 98 Wash. App. 146, 148-49 (1999).

Plaintiff alleges that Defendants knew, or in the exercise of ordinary care, should have known, that its employee had dangerous tendencies or was unfit to be trusted with the private data of Defendants' customers when he was hired and/or retained, and Defendants' actions proximately causes Plaintiff's injuries.

Plaintiff has adequately plead a negligent hiring and retention claim sufficient to survive Defendant's Motion to Dismiss.

### (6) Unauthorized Disclosure of Intimate Images Act

Defendants assert the Washington State Unauthorized Disclosure of Intimate Images Act does not provide for vicarious liability. Wash. Rev. Code 4.24.795 was repealed in July 2023. It was replaced by Wash. Rev. Code § 7.110.020.

Wash. Rev. Code § 4.24.795 provided a cause of action distribution of intimate images. Section (2) states:

> Any person who distributes an intimate image of another person . . . and at the time of such distribution knows or reasonably should know that disclosure would cause harm to the depicted person shall be liable to that other person for actual damages including, but not limited to, pain and suffering, emotional distress, economic damages, and lost earnings, reasonable attorneys' fees and costs.

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 13

Wash. Rev. Code § 4.24.795(2) (2022).[4]

Wash. Rev. Code § 7.110.020 provides a civil cause of action:

(2) Except as otherwise provided in RCW 7.110.030, a depicted individual who is identifiable and who suffers harm from a person's intentional disclosure or threatened disclosure of an intimate image that was private without the depicted individual's consent has a cause of action against the person if the person knew or acted with reckless disregard for whether:
    (a) The depicted individual did not consent to the disclosure;
    (b) The intimate image was private; and
    (c) The depicted individual was identifiable.[5]

Here, the statute is silent regarding whether a principal will be held accountable if its agent violates the statute. The parties ask the Court to rely on the plain language of the statute to conclude either there is or there is not a basis for vicarious liability. However, the Court does not believe this is the proper inquiry. Rather, the focus should be principle/agent precedent and whether Washington law would impute liability on Defendants for violation of this statute.

There is little to no caselaw regarding the two statutes as issue. However, the Court believes that Washington courts would impose vicarious liability on employers for the actions of their employees if they violated this statute, as long as the employee was acting within the scope of their employment. *See Emeson v. Dept. of Corrections*, 194 Wash.App. 617, 640 (2016) (finding that an employee's alleged invasion of privacy claim cannot be imputed on the employer where there

---

[4] This provision was repealed on July 23, 2023. The savings clause of the new statute states: "The repeal of section 11 of this act does not affect any existing right acquired or liability or obligation incurred under RCW 4.24.795 or under any rule or order adopted under that section, nor does it affect any proceedings instituted under that section. 2023 Wash Legis. Serv. Ch. 65 (S.H.B. 1165).

[5] This section was amended by 2024 Wash. Legis. Serv. Ch. 88 (S.H.B. 1999).

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 14

was not dispute that the employee was not fulfilling their job responsibilities at the time of the alleged tort). The Court declines to find as a matter of law that Washington State Unauthorized Disclosure of Intimate Images Act does not provide for vicarious liability. Because Plaintiff has alleged sufficient facts that Gomez was acting within the scope of his employment, Plaintiff has alleged sufficient facts to hold Defendants liable for Gomez's alleged violation of the Washington State Unauthorized Disclosure of Intimate Images Act.

### (7) Sexual Harassment / Discrimination under the Washington Law Against Discrimination (WLAD)

Defendants argue that Plaintiff's sexual harassment / discrimination claim under the Washington Law Against Discrimination (WLAD) claim must be dismissed because Plaintiff fails to state sufficient facts alleging actionable discrimination.

The WLAD protects the customer's "full enjoyment" of the services and privileges offered in public accommodation. Wash. Rev. Code § 49.60.030(1)(b); s*ee also Floeting v. Group Health Coop.*, 192 Wash.2d 848, 855 (2019). In order to plead a prima facie claim of discrimination in a place of public accommodation, Plaintiff must alleged that (1) she is a member of a protected class; (2) Defendants' establishment is a place of public accommodation; (3) Defendants discriminated against Plaintiff when it did not treat Plaintiff in a manner comparable to the treatment it provides to persons outside that class, and (4) Plaintiff's protected status was a substantial factor that cause the discrimination. *Id.* at 853.

Plaintiff alleges she is a member of a protected claims, the T-Mobile store is a place of public accommodation where goods, merchandise and services are sold, Defendants' employee committed an act of discrimination towards Plaintiff when he intentionally accessed and disseminated explicit images and videos depicting Plaintiff in the course of her phone trade-in at Defendants' establishment, and her gender was a substantial factor that cause the discrimination.

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 15

Plaintiff has alleged sufficient facts to adequately plead a claim for sexual discrimination in a place of public accommodation under the WLAD.

### (8) Outrage

Defendants assert Plaintiff's claim of outrage fails because the theory of vicarious liability is deficient, any conduct by Defendants or other employees are not "extreme and outrageous," and it is duplicative of the WLAD claim.

Under Washington law, to state a claim of outrage, Plaintiff must plead that (1) she suffered severe emotional distress; (2) the emotional distress was inflicted intentionally or recklessly, and not negligently; (3) the conduct complained of was outrageous and extreme; and (4) she personally was the object of the outrageous conduct. *Janaszak v. State*, 173 Wash.App. 703, 726 (2013). Defendants' conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation omitted).

Plaintiff alleged Defendants engaged in extreme and outrageous conduct when Defendants' employee intentionally removed the sticker affixed to Plaintiff's old iPhone screen to signify that the contents of the device would remain private, entered in the password he had obtained under false pretenses, and searched through accounts he lacked authorization to access to find and transmit explicit and intimate images of Plaintiff. When Plaintiff learned of the theft of her intimate images, she returned to the store for help, but other employees covered up the crime, obstructing her access to a manager and lying that there had been no trade-ins that day. She alleges that Defendants forced her to pay out-of-pocket in exchange for accessing her old iPhone from which Defendants were stealing her nude images.

Plaintiff has alleged sufficient facts to adequately plead a claim of outrage. As set forth above, Plaintiff has alleged adequately facts to impose vicarious liability on Defendants for the conduct of their employees.

**ORDER GRANTING MOTION TO DISMISS, IN PART ~ 16**

**(9) Consumer Protection Act claim (CPA)**

Defendants argue Plaintiff's Consumer Protection Act (CPA) claim should be dismissed because Plaintiff fails to plea with particularity, her damages are not cognizable, and she fails to allege conduct that has the capacity to deceive a substantial portion of the public.

To state a claim under the CPA, Plaintiff must plead: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to Plaintiff in her business or property; and (5) causation. *Klem v. Wash. Mut. Bank*, 176 Wash.2d 771, 782 (2013).

Plaintiff alleges that Defendants engaged in unfair and deceptive conduct under the CPA, including by making representations to Plaintiff and the public that it maintained privacy and data safeguards, by offering customers incentives to trade-in their old devices only to then steal intimate data from them, by deceptively holding out stores as T-Mobile that were operated by third parties, and by employing unfit individuals to access consumer's private data.

Plaintiff has alleged sufficient facts to state a claim for violation of the CPA.

**(10) Trespass to Chattels and Conversion claims**

Defendant argues that Plaintiff failed to adequately plead that Defendants interfered with any chattel, without lawful justification, which deprived her of possession.

Under Washington law, conversion is the unjustified and willful interference with a chattel that deprives a person entitled to the property of possession. *In re Marriage of Langham & Kolde*, 153 Wash.2d 553, 564 (2005). Wrongful intent is not an element of conversion and good faith is not a defense to conversion. *Paris American Corp. v. McCausland*, 52 Wash.App. 434, 443 (1988). Trespass to chattels is something less than a conversion. It is the intentional interference with a party's personal property without justification that deprives the owner of possession or use. Restatement (Second) Torts § 217 (1965). While a plaintiff must

**ORDER GRANTING MOTION TO DISMISS, IN PART** ~ 17

show that the interference was intentional, no intent to deprive the owner must be shown. *Judkins v. Sadler–Mac Neil*, 61 Wash.2d 1, 4 (1962).

Plaintiff alleges that Defendants intentionally interfered with Plaintiff's personal property and caused actual damage to the device by wiping it of data before returning it to Plaintiff. Plaintiff also alleges that Defendants deprived Plaintiff of ownership of her old iPhone, private access to her social media accounts, and the data contained on the device.

Plaintiff has adequately plead claims for Trespass to Chattels and Conversion.

### (11) Punitive damages

Generally, Washington courts disapprove of punitive damages as contrary to public policy because they impose on Defendants a penalty generally reserved for criminal sanctions, and also award Plaintiff with a windfall beyond compensation. *Dailey v. N. Coast Life Ins. Co.*, 129 Wash.2d 572, 574 (1996). Because of this, recovery of punitive damages is not be allowed unless expressly authorized by statute. *Kennewick Educ. Ass'n v. Kennewick Sch. Dist. No. 17*, 35 Wash.App. 280, 282 (1983).

In her response, Plaintiff failed to identify any statute that authorizes punitive damages. As such, punitive damages are barred as a matter of law.

//
//
//
//
//
//
//
//
//

**ORDER GRANTING MOTION TO DISMISS, IN PART ~ 18**

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss, ECF No. 34, is **GRANTED**, in part. The Court dismisses Plaintiff's CFAA claim, without prejudice.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 18th day of April 2024.



Stanley A. Bastian
Chief United States District Judge